LAMBERT OVERBECK, PLAINTIFF-APPELLEE, v. ERIE RAILROAD COMPANY, A BODY CORPORATE OF THE STATE OF NEW YORK, DEFENDANT-APPELLANT.

Submitted October 15, 1936—Decided October 23, 1936.

Before Justices TRENCHARD, BODINE and HEHER.

For the defendant-appellant, *Hobart & Minard* (*George S. Hobart* and *Augustine J. Kelly*.

For the plaintiff-appellee, *Joseph V. Fumagalli* and *Peter Hofstra*.

BODINE, J. The defendant appeals from a judgment in favor of the plaintiff. The case was tried upon an agreed state of facts before the District Court without a jury.

It appears that on December 24th, 1934, the plaintiff was a passenger on the defendant's railroad from Jersey City to Warren Point. He was a regular commuter and usually took the train on which he was injured. The usual stopping time at Warren Point is just long enough to discharge passengers. The westerly end of the coach in which plaintiff was riding was opposite the west-bound platform when the train came to a stop. Sometimes, however, the east end of the rear car clears a train trestle, but not so on the night in question. Plaintiff instead of alighting by the west end of the car went out the east or rear door. Stepping down to the first step, he discovered that a girder of the trestle with which he was familiar blocked his exit on the right-hand side where he normally alighted. He attempted to return to the west end or front exit of the coach in order that he might alight, and placed his left hand in a crevice between the hinge part of the door and the side of the car. His intention was to pull himself around quickly in order to return to the other end of the car. Another passenger, leaving the train by the rear door but unaware of the plaintiff's hand in the crevice of the door, allowed the door to close upon it causing the injuries for which the plaintiff had recovery. There was error in the failure of the court to grant the defendant's motion for a directed verdict.

It is admitted that the stopping of the train so that the rear coach was partly on the trestle was not unusual. In fact, the plaintiff suspected this would be the situation. He choose to go to the rear of the car in which he was riding to see if the train was clear of the trestle instead of going to the front. He was not injured by the fact that the train had

not cleared the trestle, but he was injured because another passenger closed the door on his hand.

"Although a common carrier is bound to exercise a high decree of care for the safety of its passengers, it is only responsible for injuries resulting from the act of a stranger when such act might reasonably have been anticipated by it." *Miller* v. *West Jersey, &c.,* 71 *N. J. L.* 363; 59 *Atl. Rep.* 13; *affirmed,* 79 *N. J. L.* 499; 76 *Atl. Rep.* 973.

There is nothing in the stipulation to suggest that the carrier had any reasonable ground to anticipate that one passenger would close the door on another passenger's finger. The occurrence was not due to faulty construction or to negligence in operation, but was due solely to the act of a stranger. He might have stepped on plaintiff's foot or caused him some other injury which could not have been foreseen.

In the case of *Kinder* v. *Erie Railroad Co.,* 109 *N. J. L.* 469; 162 *Atl. Rep.* 387, the plaintiff was a passenger on a train he was not accustomed to ride. When the train arrived at Bloomfield, where he was to alight, he proceeded to the forward end of the car in which he was riding. Finding that the right-hand side of the car was upon a bridge over a canal and realizing his danger, he turned to leave by the left-hand side and had alighted upon a planked space between the tracks when he was struck and injured by defendant's train coming into the station from the opposite direction. The company had forbidden the running of trains into the station when another train was standing discharging passengers. In that case it was quite properly held that the proofs made the case one for the jury. But in the present case, the plaintiff knew that the train sometimes stopped on the trestle, and to determine whether he might or might not alight at that point he went back to see. His injury occurred, not through any act of the defendant, but by reason of an act of a third person which the carrier had no reasonable ground to anticipate might occur, and no reasonable method of guarding against.

The law relating to the causal connection between an original wrong and the resulting injury was but lately examined, and the authorities noted, in *Daniel* v. *Gielty Trucking Co.,*

116 *N. J. L.* 172; 182 *All. Rep.* 638. In view of the fact that there appears to be no proof indicative of an original wrong by the defendant company, the proximate cause of plaintiff's injury, it is unnecessary to examine the authorities with respect to causal connection between the original wrong and the resulting injury where third parties contribute to the injury. It is more than clear that the resulting wrong in the present case, which was no act of the defendant, was the efficient cause of the injury. Even assuming that the defendant had been negligent in stopping its train where it did, that act in no way contributed to the plaintiff's injury. He was not hurt in attempting to alight from the train but was injured by the careless manner in which a door was closed on his finger.

"An intervening cause is the act of an independent agency which destroys the causal connection between the negligent act of the defendant and the wrongful injury, the independent act being the immediate cause, in which case damages are not recoverable because the original wrongful act is not the proximate cause." *Davenport* v. *McClellan*, 88 *N. J. L.* 653; 96 *All. Rep.* 921. See, also, *Smith* v. *James J. McFeely, Inc.*, 13 *N. J. Mis. R.* 25; 175 *All. Rep.* 368.

The judgment is reversed, and the District Court is directed to enter judgment in favor of the defendant in accordance with this opinion.